```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         NORTHERN DIVISION


UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:16CR54-HTW-FKB

MARK LONGORIA
```

**PLEA HEARING**

```
              BEFORE THE HONORABLE HENRY T. WINGATE
                   UNITED STATES DISTRICT JUDGE
                        AUGUST 3RD, 2016
                       JACKSON, MISSISSIPPI



APPEARANCES:

FOR THE GOVERNMENT:    MR. DARREN J. LaMARCA
                       MR. PATRICK A. LEMON

FOR THE DEFENDANT:     MR. THOMAS M. FORTNER



REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR
```
_____

```
                   501 E. Court, Suite 2.500
                   Jackson, Mississippi  39201
                        (601) 608-4187
```

1          THE COURT:  You may be seated.  Call your case,

2    please.

3          MR. LaMARCA:  Your Honor, before the court is *United*

4    *States v. Mark Longoria,* criminal number 3:16cr54.

5    Mr. Longoria is present with his attorney, Thomas Fortner, and

6    is present, your Honor, for a change of plea as to an

7    information.

8          THE COURT:  All right.  Please approach the podium.

9      (COMPLIED WITH REQUEST)

10         THE COURT:  Good morning.

11         MR. FORTNER:  Good morning, your Honor.

12         THE COURT:  And, counsel, you're with your client?

13         MR. FORTNER:  Yes, your Honor.  Good afternoon, your

14    Honor.  I'm Tom Fortner, and I am representing Mark Longoria

15    who is present standing beside me in court.

16         THE COURT:  All right.  And hello to both of you.

17         THE DEFENDANT:  Hello, your Honor.

18         THE COURT:  Now, I understand that your client wishes

19    to enter a plea of guilty to a criminal information.

20         MR. FORTNER:  That is correct, your Honor.

21      (PAUSE)

22         THE COURT:  All right.  To the defendant, I need to

23    ask you some questions, and these questions must be answered

24    under oath and truthfully.  So at this time I'll have the

25    courtroom deputy swear you in.

```
1          (DEFENDANT ADMINISTERED THE OATH)

2               THE COURT:  Now, do you understand that you have now

3    been sworn?

4               THE DEFENDANT:  Yes, sir.

5               THE COURT:  Do you further understand that if you

6    answer any of my questions untruthfully that you could be

7    prosecuted for perjury?

8               THE DEFENDANT:  Yes, sir.

9               THE COURT:  And do you know what perjury is?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Perjury, of course, is lying under oath.

12   So you do understand that.

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Now, how old are you?

15              THE DEFENDANT:  53.

16              THE COURT:  How much schooling do you have?

17              THE DEFENDANT:  I have an associate's degree, sir.

18              THE COURT:  From?

19              THE DEFENDANT:  Alamance Community College.

20              THE COURT:  Say it again.

21              THE DEFENDANT:  Alamance Community College.

22              THE COURT:  Where is that located?

23              THE DEFENDANT:  That's located in Burlington, North

24   Carolina.

25              THE COURT:  And did you complete the full two years of
```

1    that study?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And how long ago was that?

4            THE DEFENDANT:  About 1991, your Honor.

5            THE COURT:  So then you can read and write.

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  I have to ask that question for the

8    record, notwithstanding that you've told me that you've

9    graduated.  Have you taken any drugs of any type, prescription

10   drugs or nonprescription drugs, or consumed any alcoholic

11   beverages within the last 24 hours?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  And what have you taken?

14           THE DEFENDANT:  I have a prescription for Adderall for

15   ADD and probably a cocktail.

16           THE COURT:  All right.  Are any of those medications

17   affecting you adversely, that is, affecting your ability to

18   understand what is happening here?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Are any of those medications vital to your

21   physical or mental health so that the court should be

22   forewarned just in case you suffer the cause of some ailment?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Have you ever been treated by any doctor,

25   psychiatrist or psychologist or in any hospital, clinic or

1    mental institution for any mental disease or disorder?

2            THE DEFENDANT:  Only ADD, your Honor.

3            THE COURT:  And for the record, would you describe

4    what ADD is?

5            THE DEFENDANT:  Having trouble focusing and

6    concentrating.  So they prescribe Adderall to, you know, help

7    you stay on point.

8            THE COURT:  And you're talking about attention deficit

9    disorder?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And how long have you suffered with this

12    particular problem?

13            THE DEFENDANT:  As far as I know, all my life.

14            THE COURT:  And has it gotten worse in any particular

15    problem -- any particular time?

16            THE DEFENDANT:  As long as I'm taking my meds, your

17    Honor, I'm okay.

18            THE COURT:  So your medicine compensates?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  And it deals with that particular ailment?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  And how often do you take that medication?

23            THE DEFENDANT:  When I really need to focus, you know.

24    So I don't take it every day, your Honor.  I take it, you know,

25    every few days.

1          THE COURT:  And have you taken any today?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Have you felt the need to take any today?

4          THE DEFENDANT:  No.  I had one yesterday.  So, you

5    know, sometimes it gets me real jittery and everything.  So,

6    no, I haven't had a need to take it today, your Honor.

7          THE COURT:  What symptom would you display if you need

8    that drug?

9          THE DEFENDANT:  The best way I can describe it, your

10   Honor, is trying to stay focused on one task instead of moving

11   from one task to another, back and forth for multi- -- multiple

12   tasks, you know, and not completing any of them.

13         THE COURT:  I see.  So, again, at present are you

14   having any difficulty in that regard?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  In order to enter a valid plea, you must

17   be mentally competent.  That means you're able to understand

18   what is happening here today.  That also means you're able to

19   appreciate and weigh the advice of your attorney.  So under

20   this definition of competence which directs itself at whether

21   you are able to appreciate the seriousness of this hearing too,

22   are you mentally competent today?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Then I have to ask whether you're mentally

25   competent to understand the difference between right and wrong

1    as that definition would apply to the dates of the criminal

2    information.  Now, have you read the criminal information?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  And how many times have you read it?

5              THE DEFENDANT:  Probably five -- the documents have

6    been provided to me multiple times, your Honor.

7              THE COURT:  And did you understand them?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Any questions about them?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  And did you see what dates were mentioned

12   in here?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And so let's look at the criminal

15   information.  You see the date of August 2013 in paragraph 4?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  There's another date of August 1, 2013, in

18   paragraph 5.

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And then there's another date of

21   August 20th, 2013, in paragraph 6.

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  As well as in paragraph 7 there's a date

24   of September 16, 2013.

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  And then May 20th, 2014, is in paragraph

2    8; and in 9, June 17, 2014.  You saw those dates?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Similarly, there are some dates in Count 1

5    of the indictment.  And, again, there's August 2013.  There's

6    the date of September 16, 2013; and paragraph 15, the date of

7    June 17, 2014.  So these are dates which are alleged in the

8    criminal information and there might be others.  But with

9    regard to all of the dates that are alleged in the criminal

10   information, on those dates did you know the difference between

11   right and wrong?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  On those dates did you know that your

14   actions were wrong as alleged by the United States Attorney's

15   Office?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  So then I turn to you, Mr. Fortner.  Are

18   you satisfied that your client is competent in all respects?

19         MR. FORTNER:  I am, your Honor.

20         THE COURT:  Both with regard to knowing the difference

21   between right and wrong and also in regard to today where he is

22   able to appreciate the consequences of this hearing?

23         MR. FORTNER:  Yes, sir, your Honor.

24         THE COURT:  Let me turn now to the prosecution.

25   Mr. LaMarca, are you satisfied as to the defendant's

```
 1   competence?

 2              MR. LaMARCA:  I am, your Honor.

 3              THE COURT:  Thank you.  Inasmuch as both counsel here

 4   are satisfied that this defendant is competent in all regards

 5   and inasmuch as the defendant himself admits that he is indeed

 6   competent in all regards, the court accepts that he is

 7   competent to know the difference between right and wrong, that

 8   he was competent in that respect on the dates charged in the

 9   criminal information, that he is competent today to appreciate

10   his actions in entering a plea to the criminal information.

11              Now, let me discuss this matter of representation by

12   counsel.  The law requires that you be adequately represented

13   by your lawyer.  Have you had enough time to discuss this case

14   with your lawyer?

15              THE DEFENDANT:  Yes, sir, your Honor.

16              THE COURT:  Are you satisfied with his advice to you?

17              THE DEFENDANT:  Yes, sir, your Honor.

18              THE COURT:  Are you satisfied with the amount of time

19   he's spent with you?

20              THE DEFENDANT:  Yes, sir, your Honor.

21              THE COURT:  Do you understand that if you have any

22   complaints at all about the way he's handled your case that you

23   should make that known to the court now?

24              THE DEFENDANT:  Yes, sir, your Honor.

25              THE COURT:  Do you further understand that if you have
```

1   complaints but choose for whatever reason not to mention those

2   complaints at this time, that should you mention those

3   complaints at a later date the court may consider those

4   complaints waived because you didn't raise them at this

5   hearing, the appropriate time to do so?  Do you understand

6   that?

7           THE DEFENDANT:  Yes, sir, your Honor.

8           THE COURT:  So, then, do you have any complaints at

9   all about the way your lawyer has handled your case?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  I move now to your constitutional rights.

12  I'm sure that Mr. Fortner has explained your constitutional

13  rights; but to be sure that you understand these rights, I need

14  to go over them again with you.

15          Do you understand that you are entitled to a trial by

16  jury if you want one; and even though you've stated that you

17  wish to enter a plea of guilty, you can still change your mind

18  and request a trial and the court will afford you a trial?  Do

19  you understand that?

20          THE DEFENDANT:  Yes, sir, your Honor.

21          THE COURT:  Do you understand that this trial that the

22  court will afford you can be either a bench trial or a trial by

23  jury?  Do you understand that?

24          THE DEFENDANT:  Yes, sir, your Honor.

25          THE COURT:  Do you know the difference?

1           THE DEFENDANT:  I would believe that one's going to

2  have 12 people or so and the other one's not --

3           THE COURT:  That is correct.

4           THE DEFENDANT:  -- just the judge.

5           THE COURT:  That is correct.  I will be judge and jury

6  if it's a bench trial.  If it's a jury trial, then you would

7  have 12 persons duly selected from the community who would

8  serve as the judges of fact.  You understand that?

9           THE DEFENDANT:  Yes, sir, your Honor.

10           THE COURT:  So then if you choose to be tried by a

11  jury, do you understand that I will impanel 12 persons who will

12  then determine whether you're guilty or not guilty of the

13  charges?

14           THE DEFENDANT:  Yes, sir, your Honor.

15           THE COURT:  Have you ever seen jury selection?

16           THE DEFENDANT:  Only on TV, your Honor.

17           THE COURT:  What happens is that the clerk in the --

18  that the jury clerk in the clerk's office will summons by

19  random lot persons from the community.  Those names will be

20  drawn then by the jury clerk to form a panel of potential

21  jurors.  Again, they'll be randomly called.  And then those

22  names will be given to your side, to the prosecution and we

23  will start jury selection.

24           At jury selection I will speak to the panel, welcome

25  them here, tell them what their broad duties will be.  And then

1    the prosecution will have an opportunity to ask that panel

2    various questions, questions that will touch on their

3    qualifications to serve.  And after that your attorney would

4    have the right to address that same panel and ask questions

5    that your attorney deemed to be material and relevant as to

6    that duty to serve.

7              After that through a procedure by which the court will

8    allow both sides to offer challenges, the court will then

9    determine who are the 12 jurors who are remaining; and then

10   they will be the ones who will be sworn in to try your case.

11   Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you further understand that during this

14   jury selection process that all of the impaneled members of the

15   jury will be sworn to give correct answers to the questions

16   submitted to them by the court, the questions submitted by the

17   prosecution and the questions submitted by your attorney?  Do

18   you understand that?

19             THE DEFENDANT:  Yes, sir, your Honor.

20             THE COURT:  Now, I have referred to your attorney

21   having this right to question the jury.  But do you understand

22   that throughout my conversation with you now, that while I

23   might refer to your attorney, I'm embracing you in that same

24   definition, because this is your case and he is your

25   representative.  So then you are the one who really has the

1    guiding hand in this litigation, because it's your case.

2          So he will speak for you; but, nevertheless, if you

3    make a decision that you wish to be honored, even if your

4    attorney disagrees with you, then the court will honor your

5    decision.  Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  So then during the jury selection process,

8    through a later method of strikes, the court will determine the

9    12 persons who should sit on the jury.  And, again, your

10   attorney will participate, prosecution will participate; and

11   each side will strike, that is ask to excuse, certain jurors

12   whom you feel shouldn't sit in judgment on this case either for

13   the prosecution or for the defense.  Do you understand that?

14         THE DEFENDANT:  Yes, sir, your Honor.

15         THE COURT:  So then those persons would be the judges

16   of the facts; and during the course of the trial, I will be the

17   judge of the law.  I will rule on objections during the course

18   of the trial.  I will maintain order, preserve decorum.  I will

19   instruct the jury at the end of the case as to what the law is,

20   but the judges of the facts will be the jury.

21         The jury will listen to all of the evidence in the

22   case.  The jury will listen to the testimony of the witnesses.

23   The jury will see the documents received into evidence.  The

24   jury will hear the opening statements and closing statements of

25   the lawyers, and then the jury will hear the instructions of

1   law provided by me at the end of the trial when I will tell the

2   jury what the law is.  And then the jury will retire to

3   deliberate upon this verdict.  Do you understand all that?

4              THE DEFENDANT:  Yes, sir, your Honor.

5              THE COURT:  And the jury's verdict must be unanimous.

6   Unanimous.  12 persons on the jury will deliberate and those 12

7   persons would have to reach a unanimous decision in the case.

8   So it can't be a partial decision, six vote one way and six

9   vote another way, and then still they say we've reached a

10  decision.  It has to be 12 to vote guilty before you could be

11  convicted.  Anything short of that would be a hung jury.  Do

12  you understand that?

13             THE DEFENDANT:  Yes, sir, your Honor.

14             THE COURT:  Any questions about that whatsoever?

15             THE DEFENDANT:  No, sir, your Honor.

16             THE COURT:  Now, during the course of the trial I will

17  advise the jury at the very top of the trial that you are

18  presumed to be innocent.  I will tell the jury that until the

19  jury reaches a determination that you are guilty and that

20  verdict is accepted by the court, you are still presumed to

21  be -- presumed to be -- did I say guilty a few minutes ago?

22             THE DEFENDANT:  No, sir, your Honor.

23             THE COURT:  Presumed to be innocent.  Do you

24  understand that?

25             THE DEFENDANT:  Yes, sir, your Honor.

1          THE COURT:  So I will explain to the jury that that

2    presumption will carry you throughout the trial and that a

3    defendant can rely upon that presumption no matter.  So since

4    the law presumes you are innocent, that presumption can take

5    the place of witnesses or exhibits or anything else, because

6    you would not have to produce any witnesses in order to be

7    found not guilty.  Do you understand that?

8          THE DEFENDANT:  Yes, sir, your Honor.

9          THE COURT:  You would not have to produce any exhibits

10   to be found not guilty.  Do you understand that too?

11         THE DEFENDANT:  Yes, sir, your Honor.

12         THE COURT:  In other words, your lawyer -- remember I

13   told you the two of you operating together under this same

14   definition -- can simply indicate to the court that you do not

15   wish to call any witnesses, you do not wish to submit any

16   exhibits, that you simply want to argue to the jury as to the

17   weight, of the effect of the evidence that's submitted by the

18   prosecution.

19         And you don't even have to do that.  You can still say

20   *I waive that too*.  And if a jury is dissatisfied with the

21   prosecution's case, the jury could find you not guilty based

22   upon the presumption of innocence.  Do you understand that?

23         THE DEFENDANT:  Yes, sir, your Honor.

24         THE COURT:  Now, the prosecution, on the other hand,

25   has to produce exhibits -- evidence, and the prosecution would

1  have to submit evidence for a jury to find you guilty.  And

2  look at it the way I explained it so far.  While the

3  prosecution has to produce evidence to prove that you are

4  guilty, a jury could find you innocent even though you produce

5  no evidence solely on the basis of that presumption of

6  innocence.  Do you understand that?

7          THE DEFENDANT:  Yes, sir, your Honor.

8          THE COURT:  So now let's talk about the prosecution.

9  So in order to prove you guilty, the prosecution would have to

10  call some witnesses.  These witnesses must be sworn, and your

11  attorney would have the right to cross-examine these witnesses

12  once they have testified on direct examination, that is, once

13  they have offered some testimony supplied by the prosecution's

14  questions.

15          After that your attorney can question their

16  credibility, can question their knowledge of the facts or

17  anything germane to their testimony that the defense feels the

18  jury should consider.  Do you understand that?

19          THE DEFENDANT:  Yes, sir, your Honor.

20          THE COURT:  With regard to exhibits, the prosecution

21  may offer exhibits.  And, of course, your attorney may object

22  to the exhibits, just as your attorney may object to a witness'

23  testimony, if the attorney finds there's some glitch in the

24  testimony or exhibits which questions whether those documents

25  or testimony meet the standards required by the rules of

1    evidence.  Do you understand all of that?

2              THE DEFENDANT:  Yes, sir, your Honor.

3              THE COURT:  Now, that's the prosecution's burden to

4    prove its case against you by proof beyond a reasonable doubt.

5    Now, have you heard that term before?

6              THE DEFENDANT:  Yes, sir, your Honor.

7              THE COURT:  Proof beyond a reasonable doubt.  That

8    means that for a jury to convict you the jury would have to say

9    by that verdict that the jury has no reasonable doubt

10   concerning your guilt.  The prosecution does not have to prove

11   its case by proof beyond all doubt or proof beyond a shadow of

12   a doubt or proof beyond a scintilla of a doubt, terms used on

13   television.  The prosecution's burden is proof beyond a

14   reasonable doubt.  Do you understand that?

15             THE DEFENDANT:  Yes, sir, your Honor.

16             THE COURT:  So during this course of the trial

17   proceedings, what would you have to prove?  The answer is

18   nothing.  You would not have to prove your innocence at all.

19   You would not have to produce any witnesses at all.  You would

20   not have to produce any exhibits at all.  You would not have to

21   testify at all.  And if you were to elect not to testify, I

22   will inform the jury that the jury could not use your election

23   against you.  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  On the other hand, if you elect to

1    testify, I will advise the jury that the jury is to weigh and

2    consider and analyze your testimony just as the jury does so

3    with every other witness, that is, not to apply any special

4    rule concerning you or to apply the same rules of engagement

5    with you and your testimony as a jury should apply regarding

6    every other witness.  Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Now, do you have any questions about

9    anything I have been discussing with you?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Now, during the trial the prosecution may

12   offer objections to various matters.  During the trial your

13   lawyer may offer objections to various matters.  So do you

14   understand that if there are objections offered during the

15   course of the trial, I'll will rule on those objections before

16   those matters, the subject of the objections, can be considered

17   by the jury?  Do you understand that?

18             THE DEFENDANT:  Yes, sir, your Honor.

19             THE COURT:  Any questions about that?

20             THE DEFENDANT:  No, sir, your Honor.

21             THE COURT:  Now, I said that you would not have to

22   offer any evidence whatsoever.  But do you understand that you

23   have a right to offer whatever evidence on this matter that you

24   may wish to do?

25             THE DEFENDANT:  Yes, sir, your Honor.

1            THE COURT:  You can call witnesses.

2            THE DEFENDANT:  Yes, sir, your Honor.

3            THE COURT:  You can offer exhibits.

4            THE DEFENDANT:  Yes, sir, your Honor.

5            THE COURT:  You can testify.

6            THE DEFENDANT:  Yes, sir, your Honor.

7            THE COURT:  All those are your choices.  Do you

8    understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And do you further understand those

11   choices will belong to you and you alone?  Do you understand

12   that?

13           THE DEFENDANT:  Yes, sir, your Honor.

14           THE COURT:  Now, if you plead guilty and if I accept

15   your plea of guilty, do you understand that you will be waiving

16   all of these rights I have been explaining to you?

17           THE DEFENDANT:  Yes, sir, your Honor.

18           THE COURT:  Do you still wish to proceed with entering

19   a plea of guilty to the criminal information?

20           THE DEFENDANT:  Yes, sir, your Honor.

21           THE COURT:  So now let's talk about that criminal

22   information.  Have you received a copy of this criminal

23   information?

24           THE DEFENDANT:  Yes, sir, your Honor.

25           THE COURT:  Now, do you know what a criminal

1    information is and how it differs from an indictment?

2           THE DEFENDANT:  The attorney just briefly explained it

3    to me as we got it, your Honor.

4           THE COURT:  Okay.  Let's talk about an indictment

5    first.  The Seventh Amendment to the United States Constitution

6    prescribes that felonies cannot proceed to a conviction/trial

7    unless preceded by an indictment by a grand jury.  Now, do you

8    know what a grand jury is?  You've probably heard the term --

9           THE DEFENDANT:  Yes, sir, I've heard the term.

10          THE COURT:  -- but you might not be that conversant

11   with it, a grand jury.  A grand jury was conceived way back in

12   1215.  The citizenry were disturbed that the king could haul

13   them into court just on his say-so without any involvement or

14   confirmation by the citizenry.

15          At the time these good citizens were ready to rebel in

16   England and they were tired of this particular practice.  So

17   the king then agreed to -- oh, let me see, get my history

18   straight -- the Magna Carta.  And what it said was that the

19   king cannot proceed to indictment unless there is a grand jury

20   of people who will determine whether charges being brought

21   should be brought.

22          Now, later on when this country began, the framers of

23   our Constitution decided that this was a very good practice.

24   So they planted this idea in our Constitution, that is, in the

25   Seventh Amendment to the Constitution, and the Seventh

1  Amendment being part of the Bill of Rights.  So then what it

2  says is that in order for a defendant to be required to stand

3  trial on a felony, that defendant has to be indicted, charged

4  formally by a grand jury.

5       A grand jury is selected at random.  So that same

6  clerk of court we talked about earlier who deals with jury

7  matters will go in her computer, pull out a bunch of names

8  randomly, and those names will be submitted to the court.  The

9  court then will call in the U.S. attorney and allow the

10  U.S. attorney -- and, of course, a court reporter will be

11  present -- to hear the proceedings.

12       The judge will read a lengthy charge to the grand jury

13  advising the grand jury of the history of the grand jury,

14  advising the grand jury of its duties in this respect, advising

15  the grand jury that they are supposed to form a bulwark, that

16  is a wall, between the citizenry and the excess of the king's

17  power.  That is they are supposed to review the charges being

18  levied against an individual and to determine whether those

19  charges possessed any validity or grist or probable cause.

20       Now, I said "or probable cause," but, quite frankly,

21  that is what the grand jury is supposed to review, that is,

22  whether the authorities have shown by probable cause to believe

23  that a crime has occurred, that a certain crime has occurred.

24  The grand jury is supposed to determine whether by probable

25  cause the authorities are asking them to indict the proper

1    person.

2          So then under this proceeding, the grand jury is

3    comprised of about 23 citizens, thereabout; and they then meet

4    with the U.S. Attorney's Office.  The United States Attorney's

5    Office then tries to satisfy those two prongs I've just been

6    discussing with you:  Probable cause to believe that a crime

7    has occurred, probable cause to believe that the individual

8    being addressed is a person who should be indicted.

9          And so then the grand jury -- so then the

10   U.S. attorney presents evidence before the grand jury.  The

11   witnesses are sworn.  A court reporter is present, and the

12   court reporter takes down all of the proceedings.  The defense

13   is not present.  The defendant who is the target of the grand

14   jury's inquiry is not present unless the defendant later waives

15   his presence and wishes to be present for a session on certain

16   rules.

17         But the grand jury looks at the evidence and then

18   determines whether to indict the person who is targeted.  If

19   the grand jury agrees that the person should be indicted, then

20   the grand jury returns what is called a true bill.  If the

21   grand jury is not satisfied, then the grand jury returns a no

22   bill.  The grand jury can return this indictment on a vote of

23   12.  So even though there may be 23 people on the grand jury,

24   as long as 12 agree to return the indictment, the indictment

25   will be returned.

```
 1              That indictment is not under that standard called

 2    proof beyond a reasonable doubt.  That indictment is returned

 3    under a standard of probable cause, probable cause to believe

 4    that a crime has occurred, probable cause to believe that the

 5    person who is the subject committed the crime.  Probable cause.

 6    Now, that's the grand jury.  Any questions about the grand

 7    jury, which works in secret?

 8              The grand jury, as I said, will have a court reporter

 9    present at all times.  And at the appropriate time the

10    defendant if indicted can have a copy of what transpired in the

11    grand jury under the appropriate rules.  Do you understand all

12    of this?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Any questions about any of this about the

15    grand jury's authority?

16              THE DEFENDANT:  No, sir.

17              THE COURT:  Now, the grand jury I said will listen to

18    witnesses generally called by U.S. Attorney's Office.  But keep

19    in mind that the grand jury is an independent body from the

20    United States Attorney's Office.  The grand jury if it wishes

21    can refuse to hear the witnesses that the prosecution may

22    tender to it.  On the other hand, the grand jury may choose to

23    call witnesses not meant to appear before the grand jury by the

24    United States Attorney's Office.

25              The grand jury is an independent body, independent of
```

 1   the U.S. Attorney's Office, independent of the judge's office

 2   and, since the defense is not there whatsoever, independent of

 3   the defense.  Do you understand all that?

 4           THE DEFENDANT:  Yes, sir, your Honor.

 5           THE COURT:  Now, does any of that surprise you on the

 6   powers of the grand jury?

 7           THE DEFENDANT:  No, sir, your Honor.

 8           THE COURT:  And when the grand jury determines that

 9   someone should be indicted, then they fill out the indictment;

10   and the foreperson of the grand jury signs the indictment

11   indicating that the grand jury has indicted this person by the

12   proper procedure and by the proper vote.  And remember what I

13   said the proper vote is?  12 of the grand jurors would have to

14   vote for the indictment.  Do you understand that?

15           THE DEFENDANT:  Yes, sir, your Honor.

16           THE COURT:  A criminal information is different.  By a

17   criminal information, we know that it falls outside the

18   constitution guarantee of the Seventh Amendment.  The Seventh

19   Amendment speaks to indictments by the grand jury.  The

20   criminal information can go forward only when the defendant

21   says, *I will go forward under the criminal information.*

22           So in an instance where the government wants to

23   readily, quickly charge someone with a felony where they do not

24   wish to wait to submit the matter to a grand jury, where the

25   U.S. Attorney's Office has had communication with the defendant

1    and the defendant agrees, the United States Attorney's Office

2    can draw up a criminal information.  And then if the defendant

3    agrees to go forward on that document, the court can proceed on

4    that criminal information just as though the action was the

5    action of a grand jury.  Do you understand that?

6            THE DEFENDANT:  Yes, sir, your Honor.

7            THE COURT:  So do you understand that with regard to

8    this criminal information I cannot go forward on this unless

9    you waive action by a grand jury on this particular charge?

10           THE DEFENDANT:  Yes, sir, your Honor.

11           THE COURT:  Do you wish to go forward on this criminal

12   information?

13           THE DEFENDANT:  Yes, sir, your Honor.

14           THE COURT:  Now, Mr. LaMarca, has he appeared before

15   the magistrate judge?

16           MR. LaMARCA:  Yes, he has.

17           THE COURT:  And at that appearance was he submitted

18   any documents which impact on whether he is waiving action

19   before the grand jury?

20           MR. LaMARCA:  He did, your Honor.  He executed along

21   with his counsel a waiver of indictment which was presented to

22   the magistrate judge.

23           THE COURT:  And when was that?

24           MR. LaMARCA:  About an hour ago.

25           THE COURT:  Okay.  Would you -- can you bring it up?

1    Do you have a copy of it?

2           MR. LaMARCA:  I do not have a copy.  It was submitted.

3           THE COURT:  Was it filed?

4           MR. LaMARCA:  It has been --

5           THE COURT:  Okay.

6           MR. LaMARCA:  -- I presume filed.  It was certainly

7    handed to the magistrate judge.

8           THE COURT:  Okay.  Thank you.  So, Mr. Longoria, with

9    regard to this whole process I've been describing, apparently

10   as described by the magistrate judge, do you have any questions

11   whatsoever on the thrust and effect of a criminal information?

12          THE DEFENDANT:  No, sir, your Honor.

13          THE COURT:  And are you ready to proceed on the

14   criminal information?

15          THE DEFENDANT:  Yes, sir, your Honor.

16          THE COURT:  Now, let's talk about this criminal

17   information.  Have you read it?

18          THE DEFENDANT:  Yes, sir, your Honor.

19          THE COURT:  You told me you read it numerous times.

20   Right?

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  I trust that you have read it.

23          THE DEFENDANT:  Yes, sir, your Honor.

24          THE COURT:  But I need to go back over it so the

25   record is clear that you have.  Now, it's in two pages -- well,

1  actually, like two and a half pages.  So I'm going to let you

2  have a seat, you and your attorney, while I read this

3  indictment.  And then when I finish, you can return to the

4  podium.  All right?

5          THE DEFENDANT:  Yes, sir, your Honor.

6      (COMPLIED WITH REQUEST)

7          THE COURT:  So follow along with me on this document

8  because I'm now about to read this indictment -- this criminal

9  information into the record.

10         The United States attorney charges:

11         1:  The Mississippi Department of Corrections, MDOC,

12  was a state government agency as that term is defined in

13  Section 666(d), Title 18, United States Code, and which

14  received benefits in excess of $10,000 annually between 2013

15  and 2014 under federal programs providing federal assistance to

16  MDOC.

17         2:  Christopher B. Epps was the commissioner of the

18  MDOC.

19         3:  The defendant, Mark Longoria -- how do you

20  pronounce your last name?

21         THE DEFENDANT:  Longoria, sir.

22         THE COURT:  All right.  Mark Longoria was an officer

23  of the Drug Testing Corporation of Houston, Texas.

24         4:  In August 2013, the MDOC awarded Drug Testing

25  Corporation the contract to sell to the MDOC drug test cups for

drug screening.

5:  On or about August 1, 2013, Drug Testing Corporation entered a commission agreement with Investigative Research, Inc., a company owned by Cecil McCrory.

6:  On or about, August 20th, 2013, Drug Testing Corporation invoiced the MDOC for the sale of drug test cups in the amount of $632,336.25.

7:  On or about September 16, 2013, after receiving payment from the MDOC, Drug Testing Corporation remitted a check to Investigative Research, Inc., in the amount of $194,837.50.

Page two, paragraph 8:  On or about May 20th, 2014, Drug Testing Corporation invoiced the MDOC for a second sale of drug test cups in the amount of $149,940.

9:  On or about June 17, 2014, after receiving payment from the MDOC, Drug Testing Corporation remitted a check to Investigative Research, Inc., in the amount of $34,997.64.

We start with Count 1, paragraph 10.  The allegations contained in paragraphs 1 through 9 of this indictment -- it says "indictment" here, but it should be "criminal information" -- are realleged and incorporated herein by reference as though fully set forth herein.

Paragraph 11:  From in or about August 2013 and continuing until at least August 2014, in Hinds and Rankin Counties in the Northern Division of the Southern District of

Mississippi and elsewhere, the defendant, Mark Longoria, did knowingly and intentionally combine, conspire, confederate and agree with Christopher B. Epps and Cecil McCrory to influence or reward Christopher B. Epps in connection with the business, transaction or series of transactions of the Mississippi Department of Corrections involving something of value of $5,000 or more, that is, the awarding and the retention of contracts to Drug Testing Corporation for drug test cups at MDOC facilities in violation of Section 666(a)(2), Title 18, United States Code.

12:  It was the object of the conspiracy that defendant, Mark Longoria, would bribe or provide kickbacks to Christopher B. Epps by the use of Cecil McCrory's company, Investigative Research, Inc., in exchange for the awarding and the retention of contracts to Drug Testing Corporation for drug testing cups at MDOC facilities.

Paragraph 13:  In furtherance of the conspiracy and to carry out its objectives, the following acts among others were committed.

14:  On September 16, 2013, the defendant, Mark Longoria, through Drug Testing Corporation paid Investigative Research, Inc., a $194,834.50 *(sic)* commission fee knowing that Cecil McCrory would provide Christopher B. Epps with cash payments out of the fee in exchange for the influence of Christopher B. Epps as commissioner of MDOC to benefit Longoria

1    and his company, Drug Testing Corporation, financially.

2          15:   On June 17, 2014, the defendant, Mark Longoria,

3    through Drug Testing Corporation paid Investigative Research,

4    Inc., a $34,997.64 commission fee knowing that Cecil McCrory

5    would provide Christopher B. Epps with cash payments out of the

6    fee in exchange for the influence of Christopher B. Epps as

7    commissioner of MDOC to benefit Longoria and his company, Drug

8    Testing Corporation, financially, all in violation of Section

9    371, Title 18, United States Code.

10          Thereafter is a Notice of Intent to Seek Criminal

11    Forfeiture.  As a result of committing the offense alleged in

12    this criminal information, the defendant -- and, by the way, I

13    substituted "criminal information" for "indictment" -- the

14    defendant shall forfeit to the United States all property

15    involved in or traceable to property involved in the offense,

16    including, but not limited to, all proceeds obtained directly

17    or indirectly from the offense and all property used to

18    facilitate the offense.  The defendant shall forfeit a money

19    judgment in the amount of $131,389.90.

20          Further, if any property described above as a result

21    of any act or omission of the defendant, (a) cannot be located

22    upon the exercise of due diligence, (b) has been transferred or

23    sold to or deposited with a third party, (c) has been placed

24    beyond the jurisdiction of the court, (d) has been

25    substantially diminished in value, or (e) has been commingled

1   with other property which cannot be divided with *(sic)*

2   difficulty, then it is the intent of the United States to seek

3   a judgment of forfeiture of any other property of the defendant

4   up to the value of the property described in this notice or any

5   bill of particulars supporting it.  All pursuant to Section

6   981(a)(1)(A) and (C), Title 18, United States Code, and Section

7   2461, Title 28, United States Code.

8            Now, will the defendant return to the podium.

9        (COMPLIED WITH REQUEST)

10           THE COURT:  Now, did you hear my reading of the

11   criminal information?

12           THE DEFENDANT:  Yes, sir, your Honor.

13           THE COURT:  And do you understand the charge against

14   you?

15           THE DEFENDANT:  Yes, sir, your Honor.

16           THE COURT:  Any questions about this charge?

17           THE DEFENDANT:  No, sir, your Honor.

18           THE COURT:  And have you discussed this charge in its

19   entirety with your lawyer?

20           THE DEFENDANT:  Yes, sir, your Honor.

21           THE COURT:  You were charged under Title 18, United

22   States Code, Section 371.  That code section makes it a crime

23   for anyone to conspire with someone else to commit an offense

24   against the laws of the United States.  You were charged with

25   conspiring to knowingly and corruptly give or agree to give

1    anything of value -- one second.

2        (PAUSE)

3        THE COURT:  You were charged in the criminal

4    information, in summary, with actions that are addressed in

5    paragraph 11, that you knowingly and intentionally entered a

6    conspiracy to influence or reward Christopher B. Epps through

7    the efforts of Cecil McCrory regarding transactions of the

8    Mississippi Department of Corrections involving something of

9    value of $5,000 or more, that is, the awarding and retention of

10   contracts to Drug Testing Corporation for drug test cups at

11   MDOC facilities.

12       This conspiracy which is alleged here comports to

13   combine the criminal actions of yourself, Christopher Epps, and

14   Cecil McCrory.  So then the government is saying here by this

15   criminal information that this was an illegal agreement, and it

16   then is raised to the level of a criminal conspiracy.

17       Now, conspiracy is an agreement between two or more

18   persons to join together to accomplish some unlawful purpose.

19   It is a kind of partnership in crime in which each member

20   becomes the agent of every other member.  If you were to decide

21   that you want a trial, then I would allow that trial.  And then

22   at the end of all of the evidence, I would instruct the jury,

23   as I am now instructing you on these points, what a conspiracy

24   is.

25       So I will tell the jury that *Before you can find this*

1  *defendant guilty of conspiracy regarding these matters, you*

2  *must be convinced that the United States Attorney's Office has*

3  *proved the following by proof beyond a reasonable doubt.* Proof

4  beyond a reasonable doubt.

5          First, that the defendant and at least one other

6  person made an agreement to accept or agree to accept anything

7  of value from any person intending to be influenced or rewarded

8  in connection with any business transaction or series of

9  transactions of such organization, government or agency

10  involving anything of value of $5,000 or more as charged in the

11  information;

12          Secondly, that you knew the unlawful purpose of the

13  agreement and joined in it willfully, that is to say, that you

14  joined in the thrust of the alleged conspiracy with the intent

15  to further its illegal purpose;

16          Thirdly, that one of the conspirators during the

17  existence of the conspiracy knowingly committed at least one of

18  the overt acts described in the information in order to

19  accomplish some object or purpose of the conspiracy.

20          So then when we talk about this point raised lastly,

21  that one -- that -- that one of the conspirators during the

22  existence of the conspiracy must have knowingly committed at

23  least one of the overt acts described in the criminal

24  information, we turn our attention to paragraph 13 and

25  thereafter.  So look at the criminal information where it says

1    in paragraph 13, "In furtherance of the conspiracy and to carry

2    out its objectives, the following acts, among others, were

3    committed."  And then you see 14 on through.  I read those

4    before for you.

5         But in order for the prosecution to prove this

6    conspiracy charge, the prosecution has to prove the object of

7    the conspiracy, which is in paragraph 12, the overt acts which

8    come 13 -- paragraph 13 and below.  And so paragraph 13 and

9    thereafter describe -- purport to describe what your conduct

10   was with regarding this alleged conspiracy.  And then that

11   section ends by charging that all this is a violation of

12   Section 371, Title 18, United States Code, the conspiracy

13   statute.

14        So, then, we return to what a conspiracy is and how

15   such is formed.  One may become a member of a conspiracy

16   without knowing all the details of the unlawful scheme.  One

17   may become a member of a conspiracy without knowing all the

18   details of the unlawful scheme or the identities of all the

19   other alleged conspiracies -- conspirators.

20        If a defendant understands the unlawful nature of a

21   plan or scheme and knowingly and intentionally joins in that

22   plan or scheme on one occasion, that is sufficient to convict

23   him for conspiracy even though the defendant had not

24   participated before and even though the defendant played only a

25   minor part.

1     The government need not prove that the alleged

2  conspirators entered into any formal agreement, nor that they

3  directly stated between themselves all the details of the

4  scheme.  Similarly, the government need not prove that all of

5  the details of the scheme alleged in the criminal information

6  were actually agreed upon or carried out, nor must it prove

7  that all of the persons alleged to have been members of the

8  conspiracy were such or that the alleged conspirators actually

9  succeeded in accomplishing their unlawful objectives.

10     Mere presence at the scene of an event even with

11  knowledge that a crime is being committed or the mere fact that

12  certain persons may have associated with each other and may

13  have assembled together and discussed common aims and interests

14  does not necessarily accomplish proof of the existence of a

15  conspiracy.  Also, a person who has no knowledge of a

16  conspiracy but who happens to act in a way which advances some

17  purpose of a conspiracy does not thereby become a conspirator.

18     So, then, a conspiracy is an agreement between two or

19  more persons to join together to accomplish some unlawful

20  purpose.  It is a kind of partnership in crime in which -- in

21  which each member becomes the agent of every other member.

22     Now, do you have any questions on what a conspiracy

23  is?

24     THE DEFENDANT:  No, sir, your Honor.

25     THE COURT:  And pay attention to this particular

1   element of scienter, that is, whether one has a criminal

2   intent.  That the defendant knew the unlawful purpose of the

3   agreement and joined in it willfully, that is, with the intent

4   to further the unlawful purpose.

5         Now, those are the elements of a conspiracy.  And in

6   order to prove this charge under Section 371, the prosecution

7   has to prove those three elements I read to you and has to

8   prove each one of the three elements by proof beyond a

9   reasonable doubt.  Do you understand that?

10        THE DEFENDANT:  Yes, sir, your Honor.

11        THE COURT:  Any questions?

12        THE DEFENDANT:  No, sir, your Honor.

13        THE COURT:  Let's talk about the penalty.  Do you know

14  what's the maximum penalty that the court can impose upon you

15  for this crime?

16        THE DEFENDANT:  I believe, your Honor, it's up to five

17  years and $250,000 fine.

18        THE COURT:  That's correct, not more than five years

19  and a fine of $250,000.  The court can also impose supervised

20  release following incarceration.  Do you know what supervised

21  release is?

22        THE DEFENDANT:  Yes, sir, your Honor.

23        THE COURT:  Under a sentence of supervised release,

24  then you would have to serve under the probation office.  And

25  the probation office will be tasked with ensuring that you

1   follow the dictates of the court with regard to certain

2   conditions, restrictions on your behavior and determining

3   whether you are in violation at any point on any of these

4   conditions or restrictions.  If the court is so impressed that

5   you are, then the court will advise the probation officer to

6   secure your presence in court.

7          And then the court -- if the court finds you guilty,

8   then the court will determine what the appropriate discipline

9   should be.  The court will have a wide range of disciplines at

10  its control.  The court may sentence to jail, prison.  The

11  court may fine.  The court may place the offending party back

12  on supervised release or whatever.  But the court will have a

13  wide range of discretion in how to address any offense of

14  supervised release.  Do you understand that?

15         THE DEFENDANT:  Yes, sir, your Honor.

16         THE COURT:  Do you also understand that the court

17  requires you to pay a $100 special assessment?

18         THE DEFENDANT:  Yes, sir, your Honor.

19         THE COURT:  Has that been paid?

20         MR. FORTNER:  Not yet, but he has the money, your

21  Honor.

22         THE COURT:  All right.  Now, are there any questions

23  with regard to the maximum penalty the court could impose?

24         THE DEFENDANT:  No, sir, your Honor.

25         THE COURT:  Now, do you understand that this court has

1   the discretion whether to sentence you under the Sentencing

2   Guidelines Act or to sentence you under the statute?  Do you

3   understand that?

4           THE DEFENDANT:  Yes, sir, your Honor.

5           THE COURT:  Have you been given some proposed

6   calculations under the Sentencing Guidelines Act that might

7   address your situation?

8           THE DEFENDANT:  Yes, sir, your Honor.  There's some

9   information outlining that that I've read.

10          THE COURT:  And do you understand that I am not bound

11  by any recommendation that the prosecution or even your lawyer

12  or even you might submit to the court?

13          THE DEFENDANT:  Yes, sir, your Honor.

14          THE COURT:  And do you recognize that the court could

15  determine to sentence you to the maximum sentence as prescribed

16  by statute?

17          THE DEFENDANT:  Yes, sir, your Honor.

18          THE COURT:  Have you discussed with anyone or had an

19  understanding of a concept called relevant conduct?

20          THE DEFENDANT:  Relevant conduct, your Honor?

21          THE COURT:  Yes.

22          THE DEFENDANT:  I don't think so, your Honor.

23          THE COURT:  Let me describe what relevant conduct is.

24  You might have discussed with your attorney and with the

25  assistant United States attorney the conduct which at this

1   stage they deem to be the conduct that would underscore this

2   charge against you, this criminal information, and that if the

3   court looks at that conduct and the guidelines prescribed by

4   that conduct or the guidelines addressing that conduct, that

5   the court might sentence you to the following sentence they

6   might have suggested it.

7           But do you understand that after you have entered a

8   successful plea, I will ask the United States Probation Office

9   to prepare a presentence investigation report?  Now, that

10  report will be done by the United States Probation Office.

11  Now, take a guess as to whom you think -- or for whom you think

12  the probation office works.  Prosecution?  Defense?  Court?

13          THE DEFENDANT:  The court, your Honor.

14          THE COURT:  The probation officer works for the court.

15  The probation officer will not be answerable to the

16  U.S. Attorney's Office or to the defendant.  That probation

17  officer is answerable only to the court.

18          So the court will make -- so the probation officer

19  will render a report on this whole matter.  And in doing so,

20  the probation officer might discover or might encounter and

21  decide to include in the report some matters that you might not

22  have recognized that the prosecution will be relying upon.  The

23  probation officer might include some information in that report

24  that the prosecution was not aware that the defense has in its

25  pocket and that such information might benefit you.  So it goes

1    both ways.

2          The probation officer will make out a neutral report

3    of all the facts that the probation officer encounters, either

4    from documents from the prosecution or documents from your side

5    if you wish to give the probation officer such or if the

6    probation officer encounters such information through some

7    other legitimate source.  And the probation officer will put

8    all this in a report.

9          And if there's some additional information in there to

10   which you have not been afforded access, then I will tell you

11   what that information is.  Similarly, if there's some

12   information in there that the prosecution has not seen

13   concerning you, I will do the same thing with the prosecution

14   and tell the prosecution.

15         But with regard to this matter of relevant conduct, if

16   the probation officer in investigating this case finds some

17   other offending activity that the probation officer thinks is

18   similarly situated or of a similar thrust to this particular

19   matter, the probation officer will include that in the report.

20   And then I will ask your lawyer, the prosecution whether they

21   agree that this conduct occurred and whether the court should

22   consider this under this banner of relevant conduct.  Do you

23   understand?

24         THE DEFENDANT:  Yes, sir, your Honor.

25         THE COURT:  And so then this could be conduct that

1   could change the address, the thrust of those calculations that

2   you were provided earlier.  Do you understand that?

3            THE DEFENDANT:  Yes, sir, your Honor.

4            THE COURT:  And, again, I remind you that even so,

5   this court is not required to sentence you under the sentencing

6   guidelines.  This court could decide not to sentence you under

7   the guidelines.  The court could decide to sentence under the

8   statute.  It is the court's discretion.  Do you understand

9   that?

10           THE DEFENDANT:  Yes, sir, your Honor.

11           THE COURT:  And even though you may have a plea

12  agreement, that plea agreement is not binding on the court.  So

13  you understand that.

14           THE DEFENDANT:  Yes, sir, your Honor.

15           THE COURT:  Any questions about any of this?

16           THE DEFENDANT:  No, sir, your Honor.

17           THE COURT:  Now, has anyone threatened you or forced

18  you to come here today to enter a plea of guilty?

19           THE DEFENDANT:  No, sir, your Honor.

20           THE COURT:  Are you entering a plea of guilty

21  voluntarily of your own free will?

22           THE DEFENDANT:  Yes, sir, your Honor.

23           THE COURT:  Let me turn to the prosecution.  Is there

24  a plea agreement?

25           MR. LaMARCA:  There is, your Honor.

1          THE COURT:  All right.  Discuss the plea agreement

2    with me.

3          MR. LaMARCA:  Your Honor, the defendant has agreed to

4    plead guilty to the information, and the government will make

5    the recommendations that are contained within the plea

6    supplement.  In addition, the plea agreement provides that the

7    defendant will waive certain rights, and he will pursuant to

8    the plea agreement waive the following rights with the

9    exception of ineffective assistance of counsel claims.

10          And those rights that he waives are the right to

11    appeal the conviction and sentence or the manner in which the

12    sentence is imposed on any ground, the right to contest the

13    conviction and sentence or the manner in which the sentence is

14    imposed in any postconviction proceeding, including, but not

15    limited to, those under 28 -- Title 28, U.S.C., Section 2255,

16    and any other type of proceeding claiming double jeopardy or

17    excessive penalty.

18          He also claims -- or -- I'm sorry -- waives any right

19    to seek attorney's fees and costs and waives any right whether

20    asserted by him or through a representative to request or

21    receive records about the case under the Freedom of Information

22    Act or the Privacy Act.

23          We request that the court confirm with the defendant

24    that he is aware that he has through his plea agreement waived

25    those rights that I've just announced to the court.

1          THE COURT:  All right.  Thank you.  Mr. Longoria, did

2     you hear what the prosecution had to say?

3          THE DEFENDANT:  Yes, sir, your Honor.

4          THE COURT:  Have you entered into a plea agreement

5     with the government?

6          THE DEFENDANT:  Yes, sir, your Honor.

7          THE COURT:  And was that decision a voluntary and free

8     decision?

9          THE DEFENDANT:  Yes, sir, your Honor.

10          THE COURT:  Did you read the document that he just

11     mentioned to me, the memorandum of understanding?

12          THE DEFENDANT:  Yes, sir, your Honor.

13          THE COURT:  Did you read it every line?

14          THE DEFENDANT:  Yes, sir, your Honor.

15          THE COURT:  And with regard to those waivers, did you

16     pay attention to those waivers?

17          THE DEFENDANT:  Absolutely, your Honor.

18          THE COURT:  All right.  I want to take your word that

19     you paid attention to the waivers.  So I will not discuss all

20     the waivers again with you, but there is one I want to make

21     sure that I do discuss with you.  By this document, you have

22     waived the right to appeal this sentence to any higher court

23     that the court may impose upon you.  Is that correct?

24          THE DEFENDANT:  Yes, sir, your Honor.

25          THE COURT:  Ordinarily, a defendant may appeal an

1   imposed sentence to the next higher court.  The defendant may

2   appeal the conviction as well as the sentence if the defendant

3   is convinced there was some error in either the conviction or

4   the sentence.  But do you understand that under this agreement

5   you are saying that you will not seek an appeal of either the

6   conviction should you satisfactorily enter a plea of guilty

7   today or the sentence that will be imposed upon you at a later

8   date?  Do you understand that?

9          THE DEFENDANT:  Yes, sir, your Honor.

10          THE COURT:  Do you have any questions about any of

11  that?

12          THE DEFENDANT:  No, sir, your Honor.

13          THE COURT:  I've already advised you that any

14  recommendation made by the prosecution is not incumbent upon

15  me, that I can sentence you to the maximum as provided by law.

16  Do you remember that?

17          THE DEFENDANT:  Yes, sir, your Honor.

18          THE COURT:  Now, then, at the end of your plea

19  agreement -- would you look at that end of that plea agreement,

20  please.

21      (COMPLIED WITH REQUEST)

22          THE COURT:  Do you see what it says there?  There are

23  five declarations there.  Do you see them?

24          THE DEFENDANT:  Yes, sir, your Honor.

25          THE COURT:  All right.  Read each one to me, please.

1      THE DEFENDANT:  "Read by or to defendant.  Explained

2  to defendant by defendant's attorney.  Understood by defendant.

3  Voluntarily accepted by defendant and agreed to and accepted by

4  defendant."

5      THE COURT:  That says that this plea agreement has

6  been, and then you read off those five elements.  Is that

7  correct?

8      THE DEFENDANT:  Yes, sir, your Honor.

9      THE COURT:  So do you agree then those declarations

10  there are true and correct with regard to your understanding

11  and participation in this plea agreement?

12      THE DEFENDANT:  Yes, sir, your Honor.

13      THE COURT:  And, counsel, it also addressed some

14  conduct of the attorneys and -- the attorney.  And do you agree

15  that what is stated there with regard to the attorney's conduct

16  is also true and accurate?

17      MR. FORTNER:  I do agree with that, your Honor.

18      THE COURT:  All right.  Now, there is a plea

19  supplement.  Have you seen the plea supplement?

20      THE DEFENDANT:  Yes, sir, your Honor.

21      THE COURT:  Now, the plea supplement is a separate

22  page -- separate document, rather.  And I need to know whether

23  you've read each page of that plea supplement.  Did you?

24      THE DEFENDANT:  Yes, sir, your Honor.

25      THE COURT:  And at the end of that plea supplement

1   there are the same five declarations that you just read.  Do

2   you see them there?

3          THE DEFENDANT:  Yes, sir, your Honor.

4          THE COURT:  And after that there's a line for your

5   signature.  Did you sign that?

6          THE DEFENDANT:  I did, your Honor.

7          THE COURT:  And you also signed the plea agreement.

8          THE DEFENDANT:  I did, your Honor.

9          THE COURT:  And, Mr. Fortner, did you sign both

10  documents?

11         MR. FORTNER:  I did, your Honor.

12         THE COURT:  And let me turn to the prosecution.  Who

13  signed on behalf of the prosecution?

14         MR. LaMARCA:  I did, your Honor.

15         THE COURT:  Thank you.  Would you please pass them

16  over, both documents.

17         MR. FORTNER:  May I approach, your Honor?

18         THE COURT:  You may.

19     (COMPLIED WITH REQUEST)

20         THE COURT:  I would never get through there.

21         MR. FORTNER:  I'm not going back that way.

22     (DOCUMENT TENDERED TO COURT)

23         THE COURT:  Thank you.  I have the plea agreement.

24  It's in four pages.  Front page says "Plea Agreement."  It's

25  dated August 3rd, 2016.  The document is in three paragraphs on

1    the first page and there is paragraph 6 on the second page.

2    Third page, paragraph 8.   Paragraph 8 concludes on page 4, and

3    then paragraph 9.   Thereafter are the declarations, and

4    following that are the signatures of the parties who are here.

5    And all have affixed their signatures as 8/3/16.

6            The second document is a plea supplement.   First page,

7    which is not numbered at the bottom nor at the top, it has two

8    paragraphs on it.   The second page has paragraph 5 continuing

9    onto the third page.   The bottom of the third page is

10   continuing with paragraph 7 and -- 7(a) and (b), continuing to

11   the top of page 4, top of -- then thereafter are paragraphs 8,

12   9, 10, continuing on to page 5, all the way down to

13   subparagraph (g), and then page 6 which ends -- at the top ends

14   with paragraph (i).

15           And thereafter are the declarations that I addressed

16   earlier.   And then following that are the signatures that I

17   mentioned earlier.   And the dates are all the same, 8/3/16.   I

18   will make this part of the record, the plea agreement and the

19   plea supplement.   The plea agreement goes -- will be a public

20   document.   The plea supplement is filed specially under seal

21   pursuant to the court's internal rules.

22           Now, then, I am going to determine the factual basis

23   for your plea.   By that I will ask the assistant United States

24   attorney to tell me the essential facts which undergird this

25   prosecution.   Now, listen carefully, because when he finishes,

1    I'm going to ask whether you agree with his assessments and

2    statements; and, if not, you'll tell me so.  So, then, why

3    don't you have a seat while then he recites whatever facts he

4    has to share with the court.

5         (COMPLIED WITH REQUEST)

6         THE COURT:  Mr. LaMarca.  Why don't you go behind the

7    podium, Mr. LaMarca.

8         (COMPLIED WITH REQUEST)

9         MR. LaMARCA:  Yes, your Honor.  Your Honor, if the

10   government were put to its burden of proof, the government's

11   evidence would show that from 2002 through 2014 Christopher

12   Epps served as commissioner of the Mississippi Department of

13   Corrections; that Drug Testing Corporation is a provider of

14   drug test cups used for drug screening MDOC inmates.

15        An investigation conducted by the FBI into the bribery

16   kickbacks and money-laundering activities of Commissioner Epps

17   revealed that on August 1 of 2013, the defendant, Mark

18   Longoria, on behalf of his company, Drug Testing Corporation,

19   entered an independent contractor agreement with Investigative

20   Research, Inc., which is a company owned by Cecil McCrory for

21   consulting services and payment of consulting fees to

22   Investigative Research based upon a fee schedule of commissions

23   for items purchased by the MDOC from Drug Testing Corporation.

24        Eleven days thereafter entering this independent

25   contractor agreement, on August 12th of 2013, the Mississippi

1   Department of Corrections awarded a contract to Drug Testing

2   Corporation that made the company the exclusive provider of

3   drug test cups to MDOC.  Eight days later, on August 20th of

4   2013, Drug Testing Corporation invoiced the Mississippi

5   Department of Corrections for the sale of drug test cups in the

6   total amount of $632,336.25.

7        Knowing that he was getting his commission from Drug

8   Testing Corporation, coconspirator Cecil McCrory agreed with

9   Mr. Epps to wire and did wire on September 4th of 2014 -- I'm

10  sorry -- 2013, $50,000 to Epps' Edward Jones investment

11  account.  Then on September 16th of 2013, after receiving

12  payment from the Mississippi Department of Corrections of the

13  $632,336.25, Drug Testing Corporation remitted a check to

14  Investigative Research in the amount of $194,837.50 as its

15  commission on the number of cups purchased by MDOC from Drug

16  Testing Corporation.

17        Towards the end of this one-year contract, on May 20th

18  of 2014, Drug Testing Corporation invoiced the Mississippi

19  Department of Corrections for a second sale of drug test cups

20  in the amount of $149,940.  On June 17th of 2014, after

21  receiving payment on that invoice from the MDOC, Drug Testing

22  Corporation remitted a check to Investigative Research in the

23  amount of $34,997.64, of which $10,000 was to be paid from

24  Mr. McCrory to Mr. Epps.

25        When confronted with this evidence, coconspirator

1   McCrory admitted that he conspired with the defendant,

2   Mr. Longoria, to manipulate the bid process in order to make

3   DTC, Drug Testing Corporation, the exclusive provider of the

4   drug test cups and to bribe Mr. Epps in relation to the sale of

5   these cups to MDOC.

6          That at all times during the life of this conspiracy,

7   MDOC received benefits in excess of $10,000 annually for the

8   years 2013 and 2014 under federal programs that provide federal

9   assistance to MDOC, one of which was from the Office of Justice

10  Programs involving the Statewide Automated Victim Information

11  and Notification Program.  This activity all took place --

12  or -- in whole or in part within the Southern District of

13  Mississippi, your Honor.

14         That would be the factual basis that the government

15  submits to the court as to this plea agreement, your Honor.

16         THE COURT:  Thank you.  Will the defendant and counsel

17  approach the podium.

18     (COMPLIED WITH REQUEST)

19         THE COURT:  Mr. Longoria, did you hear what the

20  prosecution had to say on this matter?

21         THE DEFENDANT:  Yes, sir, your Honor.

22         THE COURT:  Do you disagree with any of the

23  statements?

24         THE DEFENDANT:  No, sir, your Honor.

25         THE COURT:  Mr. Longoria, I need to recite for the

1    record that after asking you this question whether you disagree

2    with any of these statements that you had about a five-second

3    pause.  So I'll ask you again.  Do you disagree with any

4    statements made by the prosecution?

5                 THE DEFENDANT:  No, sir, your Honor.

6                 THE COURT:  Mr. Longoria, the prosecution says this

7    conspiracy began in 2013.  Do you agree with that?

8                 THE DEFENDANT:  Your Honor, in -- we entered into an

9    agreement with Investigative Research at about that time, your

10   Honor.  And at that time, your Honor, I had an agreement with

11   Investigative Research, and I wasn't aware at that time that he

12   was paying any money to Commissioner Epps.  I later found out

13   in May when they were placing the bridge order.

14            Basically, what the state does is they order all their

15   drug-testing products, and then we manufacture that -- you

16   know, the company that we buy it from manufactures it, and we

17   ship it every other month for them.  And they pay up front so

18   that they can do the manufacturing and everything to us.  Then

19   we paid Commissioner -- we paid Investigative Research the

20   commission check on the order.

21            In May when they ran out of product and they placed a

22   bridge order, I found out at that point in a conversation with

23   Investigative Research, with Cecil McCrory, he said something

24   to the effect that his commission and Commissioner Epps'.

25   That's at the point when -- when I found out that they were

1    definitely -- he was definitely paying money to the

2    commissioner.

3            THE COURT:   This was in a conversation with

4    Mr. McCrory?

5            THE DEFENDANT:   Yes, sir.

6            THE COURT:   Was that a telephone or in-person

7    conversation?

8            THE DEFENDANT:   No.   It was over the phone, your

9    Honor.

10           THE COURT:   Did you reject that matter or offer any

11   objection to it?

12           THE DEFENDANT:   No, sir, your Honor, I did not.

13   Regrettably, I did not.

14           THE COURT:   So you knew then at that point that there

15   was a kickback scheme in operation?

16           THE DEFENDANT:   At that point, your Honor, that's when

17   I put two and two -- I mean, that confirmed, you know, what was

18   going on, your Honor.

19           THE COURT:   Did you already have suspicions?

20           THE DEFENDANT:   You know, your Honor, there was so

21   many -- every company out there that did business with the

22   state did -- hired Cecil McCrory as a consultant.   So I knew

23   they had to have some type -- I didn't know the details or

24   anything like that, but I knew they had to have some type of

25   connections to be able to get all this done.   And no other

1     states that I work in conducted business that way.

2              THE COURT:  What other states have you worked in?

3              THE DEFENDANT:  Louisiana, Arkansas, Oklahoma,

4     Virginia.  Those are primarily the states that we do business

5     in.

6              THE COURT:  You supply drug testing cups for them?

7              THE DEFENDANT:  At -- not for Drug Testing

8     Corporation, your Honor, but for the manufacturers -- the

9     actual manufacturer, the company that made the product at that

10    time.

11             THE COURT:  And you say nobody else dealt like that?

12             THE DEFENDANT:  No, sir, your Honor.  They had

13    consultants, but not to the effect that it was so pushed that

14    you had to use this one.

15             THE COURT:  So, again, how did you come in contact

16    with McCrory?  Did he contact you or you contacted him?

17             THE DEFENDANT:  He contacted us.

18             THE COURT:  And what was the gist of his contact?

19             THE DEFENDANT:  When -- you know, during different

20    conferences, ACA, APPA, different conferences, prison

21    conferences and things like that, I was introduced to Cecil

22    McCrory.  And they just said this is the consultant, you know,

23    that the state primarily uses.  And we entered into

24    conversations about the drug testing products and what our

25    company has to offer the state.

1      THE COURT:  So when you say he was a consultant for

2  the state, why did you need a consultant instead of going

3  directly to the prison?

4      THE DEFENDANT:  I don't know, your Honor.

5      THE COURT:  You thought you needed one?

6      THE DEFENDANT:  Absolutely, your Honor, in --

7      THE COURT:  Were you told you needed one?

8      THE DEFENDANT:  Absolutely, your Honor, in

9  Mississippi.

10      THE COURT:  Mississippi says you had to have a

11  consultant?

12      THE DEFENDANT:  You know, the -- pretty much everybody

13  that did business in Mississippi used the same consultant, your

14  Honor.  So I assumed that if we were going to get the business,

15  I had to use Investigative Research, Cecil McCrory.

16      THE COURT:  And so you're saying everybody who did

17  business with the penitentiary had to go through him?

18      THE DEFENDANT:  To my understanding, your Honor.

19      THE COURT:  So then did you have to pay him an upfront

20  fee.

21      THE DEFENDANT:  No, sir, your Honor.

22      THE COURT:  So, then, what was he to get out of it

23  from when you all first began this enterprise?

24      THE DEFENDANT:  He would only -- he would only get

25  paid if we did any business with the state, if we were awarded

1  any business and they ordered product from us.  He got paid a

2  straight commission on exactly the per number of cups that the

3  state ordered.

4           THE COURT:  So, then, who ordered the number of cups?

5           THE DEFENDANT:  The -- Rick McCarty, the procurement

6  person for the -- the state put out a bid on a BidNet.  And

7  once that was awarded, Rick McCarty, the purchasing agent,

8  ordered the whole year's worth of product which was -- that

9  was -- the $632,336.25 was the whole year's worth of product

10 that they ordered from us.

11          THE COURT:  Did you have competitors?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  How many?

14          THE DEFENDANT:  Three competitors -- two competitors

15 on the bid, your Honor.  But competitors in that marketplace,

16 your Honor, that have access to our product, you know, the

17 product that I used, there's hundreds of competitors out there

18 that -- that sell that type of product.

19          THE COURT:  So you expected this to be a competitive

20 bidding situation.

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  And so, then, did you have someone

23 primarily who would determine what your appropriate bid should

24 be?

25          THE DEFENDANT:  We went basically off of what we

1   thought would be a competitive price based on the previous

2   year's purchasing of that product, of that same product.  So we

3   discounted it down from the previous vendor.

4         THE COURT:  And do you know why the previous vendor

5   was no longer the go-to person?

6         THE DEFENDANT:  Your Honor, they were buying off of a

7   GSA contract.  Basically, the GSA contract or VA/GSA contract

8   is where that product is available at a set price.  And any

9   state -- any government agency can buy off of that.  And I was

10   told that they couldn't -- they couldn't any longer buy that

11   way and that it had to go out to bid.

12         THE COURT:  Do you know whether that was an accurate

13   statement?

14         THE DEFENDANT:  Sir?

15         THE COURT:  Was that a truthful statement?

16         THE DEFENDANT:  Yes, sir, your Honor.

17         THE COURT:  It had to go to bid?

18         THE DEFENDANT:  That's what I was told, your Honor.

19         THE COURT:  What I'm saying is you were told that, but

20   do you know whether that was a truthful statement?

21         THE DEFENDANT:  Oh, no, sir, your Honor.

22         THE COURT:  You don't know.

23         THE DEFENDANT:  No, sir, your Honor.

24         THE COURT:  So, then, something else was said during

25   the time that the prosecution submitted some facts before me

1    concerning this matter.  It says that through a manipulative

2    bid process that you gained the contract.  What was the

3    manipulation?

4            MR. FORTNER:  Can I have just one minute, Judge?

5            THE COURT:  Okay.

6        (COUNSEL AND DEFENDANT CONFERRED)

7            MR. FORTNER:  Thank you, your Honor.

8            THE COURT:  Okay.

9            THE DEFENDANT:  Your Honor, the manipulative -- the

10   statement that they were saying about the bid, there are

11   recordings, your Honor, where Cecil McCrory and I are talking

12   about bid specifications that will lock out China-made product.

13   The state -- the incumbent product that they were using was the

14   same product that we intended to bid, and so that product met

15   specific specifications.

16            So since there was never a bid for this product

17   before, we were discussing bid specifications that would allow

18   them to buy American-made product, the product -- the incumbent

19   product versus China-made product that would go in there at

20   half the price, you know, half the quality, half the price.  So

21   there was information in there about SAMSHA-certified

22   laboratories doing confirmation testing for any positives and

23   that -- that type of thing for the bid specifications, your

24   Honor.

25            THE COURT:  All right.  I see.  Thank you.  So then

1    with regard to what Mr. LaMarca said about this whole

2    procedure, then you're telling me you agree with him.

3            THE DEFENDANT:  Yes, sir, your Honor.

4            THE COURT:  So then I ask you, with regard to the

5    criminal information, the charge under 371, how do you plead,

6    guilty or not guilty?

7            THE DEFENDANT:  Guilty, your Honor.

8            THE COURT:  Then, Mr. Longoria, since you're pleading

9    guilty to the charge in the indictment -- excuse me -- the

10   charge in the criminal information, since you know what the

11   maximum possible punishment is and since you're voluntarily

12   pleading guilty, I will accept your plea of guilty as to the

13   count in the criminal information and I hereby enter a judgment

14   against you as to that count.

15           I will sentence you on October 13, 2016, at 9:30 a.m.

16   That date is October 13, 2016, at 9:30 a.m.  Meanwhile, I'm

17   going to ask the United States Probation Office to prepare its

18   presentence investigation report on you.  Now, I will use this

19   report to determine what is the appropriate sentence.

20           And the probation officer in securing all the

21   information in that report will need to talk to you.  And I

22   urge you to cooperate.  But, now, if the probation officer

23   happens to ask you any question that could incriminate you on

24   any other matters, you have a right to refuse to answer.  But

25   you will have your lawyer present with you during the entire

1     time of the interview, and so then you need to consult with

2     your attorney as to whether you should answer a question or not

3     answer it.  Do you understand that?

4            THE DEFENDANT:  Yes, sir, your Honor.

5            THE COURT:  Before you come here for sentencing on

6     October 13, 2016, you are to read the presentence investigation

7     report in its entirety.  Now, I'm going to read every last word

8     of this report.  So you need to read it yourself.  In fact, I'm

9     going to ask at the start of the hearing whether you've read

10     each and every line of this report.

11            If you tell me that you haven't, then I'm going to

12     have to recess so that you can read it.  But if you haven't

13     read it and there appears to be some information there to which

14     you take objection and feel should not be seen by me, then keep

15     in mind that it will be your fault if I read it, because you

16     should read it preliminarily before you come here.  Do you

17     understand that?

18            THE DEFENDANT:  Yes, sir, your Honor.

19            THE COURT:  And discuss it thoroughly with your lawyer

20     in all respects.  Do you understand that?

21            THE DEFENDANT:  Yes, sir, your Honor.

22            THE COURT:  Do you have any questions about that?

23            THE DEFENDANT:  No, sir, your Honor.

24            THE COURT:  Now, let's talk about the defendant's

25     liberty situation.  Prosecution.

1          MR. LaMARCA:  Your Honor, the defendant is on an

2     unsecured bond of $10,000.  The prosecution would recommend

3     that he be continued on that same bond at least through the

4     date of sentencing with evaluation at that point in time as to

5     what the court wants to do at that point.

6          THE COURT:  All right.  And, Mr. Fortner, are you

7     making that request?

8          MR. FORTNER:  I am, your Honor.  And I'd point out for

9     the court that I've had absolutely no problem maintaining

10    contact with Mr. Longoria or with him maintaining contact with

11    me.  He's come here to the state whenever I needed him to.

12    He's been very cooperative at -- very cooperative with the

13    marshal service and the probation/parole.  So I would ask you

14    to consider maintaining his release at this time.

15         THE COURT:  Mr. Longoria, I'm going to follow those

16    recommendations.  I'm going to allow you to remain free under

17    the same conditions you are now under.  Do you understand,

18    though, that you are to be here on the date I previously

19    announced?

20         THE DEFENDANT:  Absolutely, your Honor.

21         THE COURT:  Do you further understand that you are not

22    to commit any crimes?  Otherwise, you'll be brought here

23    earlier.  Do you understand that?

24         THE DEFENDANT:  Absolutely, your Honor.

25         THE COURT:  Or even if you violated conditions and

1   restrictions on the bond, do you understand that you'd be

2   brought here earlier?

3           THE DEFENDANT:  Yes, sir --

4           THE COURT:  Do you understand that?

5           THE DEFENDANT:  -- your Honor.

6           THE COURT:  Now, Mr. Longoria, I don't know whether

7   you are a hunter or a marksman or have some affinity for

8   firearms, but you have now been convicted of a felony.  And

9   since you are convicted of a felony or a felon, you cannot

10  possess any type of firearm no matter what kind of firearm,

11  whether it's a pistol, a rifle, shotgun, any type of firearm.

12          Further, that you cannot possess this firearm for any

13  lawful reason.  That includes hunting.  That includes

14  self-protection.  That also includes gun collecting.  This

15  prohibition on a firearm also reaches over and embraces

16  ammunition.  So you cannot have firearm ammunition either.  So

17  if you are ever apprehended with firearms or firearm

18  ammunition, then you would be subject to prosecution.

19          And let me further explain that with regard to having

20  something in your possession means possessing an item either

21  actually or constructively.  "Actually" means that you have it

22  on your person, in your hands.  "Constructive possession" is

23  having a firearm or ammunition in an area over which you have

24  control from which you may readily obtain the item.

25          That means you can't have it in your car, you can't

have it in your house, you can't have it in a shed behind the

house or anywhere that fits that definition I've just given to

you.  Lastly, this prohibition on your having a

firearm/ammunition will last for the rest of your life.  Do you

understand that?

THE DEFENDANT:  Yes, sir, your Honor.

THE COURT:  So, then, if you have a firearm in your

household now, talk to Mr. Fortner.  He will tell you how to

dispose of the firearm, whether it's in your house or car or

anywhere else over which you have control.  So make sure you

talk to him about this because if you are apprehended with a

firearm, then you'll be facing a strict punishment for such.

Now, do you understand?

THE DEFENDANT:  Yes, sir, your Honor.

THE COURT:  All right.  Now, from the prosecution, is

there anything else?

MR. LaMARCA:  I don't believe so, your Honor.

THE COURT:  Thank you.  Let me turn to probation.

Anything from probation?

PROBATION OFFICER:  I just need the defendant to sign

a few forms, your Honor.

THE COURT:  Okay.  And she'll need you to sign a few

forms.  Mr. Fortner, anything else?

MR. FORTNER:  No, your Honor, nothing else.

THE COURT:  Then I'll see you all back here

```
1    October 13, 2016, at 9:30 a.m.

2            MR. FORTNER:  Thank you, your Honor.

3            THE COURT:  All right.  Thank you.

4       (HEARING CONCLUDED)
```

```
 1                      CERTIFICATE OF REPORTER

 2

 3           I, MARY VIRGINIA "Gina" MORRIS, Official Court

 4    Reporter, United States District Court, Southern District of

 5    Mississippi, do hereby certify that the above and foregoing

 6    pages contain a full, true and correct transcript of the

 7    proceedings had in the aforenamed case at the time and

 8    place indicated, which proceedings were recorded by me to

 9    the best of my skill and ability.

10           I certify that the transcript fees and format

11    comply with those prescribed by the Court and Judicial

12    Conference of the United States.

13           This the 10th day of August, 2016.

14

15                            s/ Gina Morris
                              U.S. DISTRICT COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```